IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER ST. HILL | : | CIVIL ACTION |
| | : | |
| v. | : | No.:   07-5300 |
| | : | |
| TRIBECA LENDING CORPORATION | : | |

**MEMORANDUM and ORDER**

**Juan R. Sánchez, J.**                                                                                                     **March 17, 2009**

Jennifer St. Hill asks this Court to allow her to rescind her $1.3 million mortgage on grounds the lender did not provide her with the required disclosure documents. St. Hill is not entitled to rescission because she received and signed for the documents the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, requires. St. Hill's lender, however, violated TILA when it failed to include St. Hill's mortgage broker's fees in the itemized costs of closing on the loan. St. Hill's untimely Complaint precludes statutory damages.

**FACTS**

St. Hill needed $1.3 million in the summer of 2006 for the trustee to satisfy her business creditors during a Chapter 7 bankruptcy. A friend referred her to a real estate agent named Francis Kilson, who in turn referred her to David Diamond, a mortgage broker doing business as Financial and Consulting Strategies, Inc. (FCS).

When St. Hill engaged Diamond to find her a mortgage loan, she agreed in the Mortgage Broker's Contract to pay Diamond one percent of the loan amount. Diamond placed St. Hill's mortgage with Tribeca Lending Corporation, a company with which he did not usually do business. Adam Turkewicz at Tribeca had solicited Diamond's mortgage business in December 2005. St. Hill

testified Kilson, Diamond, and Turkewicz told her she could refinance easily because her house had appreciated from $535,000.00 to $2 million. St. Hill testified she expected a six percent fixed rate mortgage even though she was in bankruptcy. St. Hill wrote to Diamond twice at the end of July claiming ownership in several businesses, a thriving law practice, and, in the Universal Residential Loan Application, claimed an income of $20,000 a month. St. Hill testified at trial she has not worked since 2004 and has lived on disability payments.

The loan offer from Tribeca included an 11.49 percent interest rate and two points, two percent of the total, as a fee to Tribeca. At St. Hill's request, Diamond negotiated a reduced interest rate of 9.99 percent and three points with Tribeca. Diamond told Turkewicz before the St. Hill settlement Diamond's fee was one percent of the loan amount.

At Turkewicz's request, Diamond met with St. Hill in July to receive her signature on four loan documents, including a Good Faith Estimate of closing costs and a Truth-in-Lending Disclosure Statement itemizing the variable mortgage payments as 24 of $12,863.87, 335 of $13,949.89, and one of $13,951.81. St. Hill wrote to Tribeca on July 27, 2006, "I realize that the payment of my proposed mortgage payment of $14,542.16 is substantially higher than the $4,656.00 that I formerly paid. However, I assure you that I am sufficiently capable of managing these payments." Tr. 1.296:8-12. St. Hill wrote a second letter to Turkewicz on July 27, 2006, stating, "In addition to my law practice, I am the owner or part owner of several other ventures, including, Philadelphia Deed Service, Convergent Enterprises and PreForeclosure4Sale." Ex. 12. Tribeca then communicated to Diamond its acceptance of the $1.3 million mortgage.

Shortly before settlement, Turkewicz told Diamond his broker's fee would not be reflected on the settlement sheet. Turkewicz told Diamond and St. Hill she would have to pay Diamond

2

outside of the settlement documents. To allow St. Hill to settle in time to satisfy the bankruptcy trustee, Diamond agreed to be paid outside of settlement. He received a post-dated check for $6,500 after settlement, and the remainder over the next year.

As a convenience to St. Hill, settlement was scheduled at her home office on August 11, 2006. Diamond and a title clerk attended the settlement with St. Hill and her then-husband. During settlement, St. Hill and her then-husband signed 23 documents prepared by Tribeca. Diamond testified he reviewed each document with St. Hill. St. Hill signed a second Federal Truth-in-Lending Disclosure Statement which prominently listed 24 payments of $11,398.83, 335 payments of $12,953.76, and one payment of $12,962.70. She also signed an ARM Program Disclosure which stated after 24 months her interest rate could adjust every six months by as much as six percent, raising her 9.9 percent rate to 15.9 percent. Ex. 23. St. Hill also signed an Adjustable Rate Note and an Adjustable Rate Rider. Exs. 25 and 28. St. Hill signed two copies of the Notice of Right to Cancel which told her "[y]ou have a legal right under federal law to cancel this transaction, without cost, within three business days. . . ." Ex. 22. St. Hill testified she made no attempt to cancel the mortgage before filing suit in December 2007.

St. Hill was not credible when she testified the first time she knew she had accepted an adjustable rate mortgage was in October 2007.[1] St. Hill testified she signed an "ARM Program Disclosure" at settlement but maintained she had not received the document. St. Hill testified, "they were left on my table. I did not receive this. I don't care how many times you ask it, I don't care how many different ways you ask it, I did not receive this. These documents were left on my table after

---

[1] Under the terms of St. Hill's bankruptcy, St. Hill's mortgage was paid for the first year by the Philadelphia Industrial Development Corporation, a quasi-governmental entity which received the proceeds from St. Hill's mortgage to pay off her creditors.

I signed them." Tr.1.238:4-7.

In December 2007, St. Hill sued Diamond, FCS, Tribeca, Litton Loan Servicing, and LaSalle Bank, the assignee of the mortgage,[2] alleging violations of TILA; Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d); violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 210-1 *et seq.*, under the Door-to-Door Sales Act, 73 P.S. § 201-7; failing to respond within 20 days to a qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(5)(e), and fraud.[3]

**DISCUSSION**

Federal Rule of Civil Procedure 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim . . . that cannot under the controlling law be maintained." Fed. R. Civ. P. 52(c). In entering judgment pursuant to Rule 52(c), I must weigh the evidence, resolve any conflicts in it, and decide where the preponderance of the evidence lies. *Giant Eagle, Inc. v. Fed. Ins. Co.*, 884 F. Supp. 979, 982 (W.D. Pa. 1995) (citing 9A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d, § 2573.1); *see also United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 105 F. Supp. 2d 346 (D. Del. 2000). I also assess the credibility of witnesses. *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 399 (3d Cir. 1999) (holding the district court can resolve disputed factual questions under Rule

---

[2] Actions for violations of TILA may be maintained against any assignee of the original creditor so long as the violation for which suit has been instituted was "apparent from the face of the disclosure statement . . . ." 15 U.S.C. § 1641(a).

[3] I granted summary judgment on one count in favor of Financial Consulting Services. Litton Loan Servicing was dismissed from the case by agreement.

52(c)).  Credibility determinations alone are insufficient to satisfy the requirements of Rule 52(c). *Newark Branch NAACP v. City of Bayonne*, 134 F.3d 113 (3d Cir.1998)..

To prove her claim under TILA, St. Hill must overcome a rebuttable presumption of delivery of the required disclosures.  15 U.S.C. § 1635(c).  TILA is intended to inform the consumer of the true cost of credit.  TILA and its implementing Regulation Z require lenders to disclose clearly and conspicuously to consumers the material terms of their loans.  *In re Escher*, 369 B.R. 862, 870 (Bankr. E.D. Pa. 2007) (citing *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir. 1980)).

The right of rescission generally arises under section 1635 of TILA.  Under this subsection, creditors are required to disclose rescission rights to their obligors and to inform them the right to rescind is open for three business days following the transaction.  If no notice is given, a consumer has three years in which to rescind. 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3).

A borrower's testimony that disclosures were not provided, without more, is insufficient to rebut the presumption disclosure occurred where there is written acknowledgment of receipt. *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1011 (7th Cir. 2004) (finding mere assertion of non-receipt insufficient to rebut written evidence disclosures were provided);  *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054 (8th Cir. 2003) (finding allegations disclosures were not provided insufficient to rebut presumption), as cited in *Strang v. Wells Fargo Bank, N.A.*, No. 04-2865, 2005 WL 1655886 at *3 (E.D. Pa. July 13, 2005).

 I do not find credible St. Hill's claims she never saw the right of rescission or adjustable rate disclosures.  Her signature appears on each document, and Diamond testified credibly he delivered each document to her before settlement.  Because I have found St. Hill received the requisite notice of her right to rescind, the three-day time limit applies.  15 U.S.C. § 1635(a); 12 C.F.R. §

5

226.23(a)(3). St. Hill's rescission claim is untimely because she received the required TILA notices and failed to rescind within three days. I need not decide whether holding the settlement at home invokes Pennsylvania's Door to Door Sales Act because the Act provides the same three-day window in which to cancel as does TILA.[4] St. Hill cannot credibly argue she would have accepted a second three-day right to rescind after rejecting the first.

To void her mortgage on the basis of fraudulent misrepresentation, St. Hill must prove by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999); *Gibbs v. Ernst*, 647 A.2d 882, 889 (1994). All of these elements must be present to warrant the extreme sanction of voiding a contract. *Porreco v. Porreco*, 811 A.2d 566, 570-71 (Pa. 2002).

St. Hill's testimony she expected a fixed rate, six percent mortgage is belied by the documents she signed in July 2006 and at settlement on August 11, 2006. St. Hill had several opportunities to decline the mortgage Tribeca offered, including during the three days after settlement. Even if early conversations with Kilson and Diamond included unwarranted puffery about the ease of placing a mortgage on an appreciated property, St. Hill signed documents before and at settlement acknowledging a variable rate mortgage beginning at either 11.4 or 9.9 percent and escalating. St. Hill fails to prove she relied on any intentional misrepresentation in signing the

---

[4]The Door-to-Door Sales Act provides a three-day right of rescission, 73 P.S. 201-7(a), and specifically does not apply to real property. 73 P.S. § 201-7(k).

mortgage. Her fraud claim against Tribeca and Financial Consulting fails.

I do, however, find Tribeca violated TILA when it failed to include Diamond's fees in its disclosures. TILA requires disclosure of all finance charges. 15 U.S.C. § 1605. Section 1605 defines finance charges as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Specifically included in finance charges are "[b]orrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed." 15 U.S.C. § 1605(a)(6). The regulation implementing TILA, Regulation Z, provides all "fees charged by a mortgage broker (including fees paid directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge." 12 C.F.R. § 226.4(a)(3) (1998).

When I apply section 1605 and Regulation Z, I find Tribeca violated TILA when it failed to include Diamond's fees in its disclosure statement. Because Kilson is not a mortgage broker, TILA does not require disclosure of the finder's fee St. Hill paid him.

TILA also includes a statute of limitations of one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e) (providing "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"). The violation in this case occurred during settlement on August 11, 2006. St. Hill filed suit December 18, 2007, more than a year after the occurrence.

If a lender tries to conceal a TILA violation, TILA's one-year statute of limitations may be extended by equitable tolling. *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3d Cir.

1998). Equitable tolling is appropriate: (1) where the defendant actively misleads the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3) where the plaintiff timely asserted her rights mistakenly in the wrong forum. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir. 1994). I award no statutory damages because St. Hill's Complaint was untimely and no grounds warrant equitable tolling.

      An appropriate order follows.